G. W. DUNTON ET AL. *v.* ELLA M. SHARPE ET AL.

1. TRUST-DEED. *Future debts. Default. Declaring debt due. Sale.*

Where a trust-deed, given a corporation to secure a debt due in future, contains a stipulation that, on default in payment of interest, the beneficiary may declare the whole debt due, it is not essential that there shall be any formal declaration. Proceeding through its agents, according to its custom, and causing a sale by the trustee, will be deemed an exercise of its right to declare the debt due.

2. TRUSTEE'S SALE. *Ministerial acts by others. Approval of trustee.*

The personal attendance by the trustee, at a sale of land under a trust-deed, is not essential. He may act through others in advertising and making the sale. All that is necessary is, that the terms of the trust-deed shall be complied with as to this, and that the trustee shall approve the sale and execute a deed. See *Tyler* v. *Herring*, 67 Miss., 169.

3. SAME. *Agent of trustee. Bidding for purchaser. Validity of sale.*

The fact that the representative of an absent trustee, who advertises and makes the sale under a trust-deed, is empowered to bid a fixed sum for the purchaser, and does so, will not incapacitate him from making the sale, especially where it appears that, but for this, the land would have sold for less.

4. SAME. *Title acquired. Prior purchase at tax-sale.*

Title to land acquired at a trustee's sale will not be affected by the mere fact that, prior to such sale, after default by the grantor in the trust-deed, the purchaser had bought the land at a tax-sale.

5. SAME. *Effort to set aside sale. Overflow. Delay.*

A trustee's sale of land, though made at a somewhat reduced price, will not be set aside on the ground that it was made just after a disastrous overflow, and when the debtor, who was poor, had asked for a delay, default under the trust-deed having been made before the overflow, and there being no reason for believing that the sale could have been averted if the overflow had not occurred.

6. SAME. *Notice of sale. Acquiescence. Estoppel. Presumption.*

Where the grantor is present at a sale made under a trust-deed, and seeks a postponement thereof, and afterwards endeavors to buy the land from the purchaser, and, failing in this, threatens to contest the sale on spe-

cific grounds, never alluding to a failure to give the prescribed notice, in a suit to set aside the sale, brought several years after possession taken thereunder, independently of any presumption arising from the trustee's deed, it will be assumed that notice of the sale was given as required.

7. SAME.   *Sale in pais.   Good faith.   Impartiality.   Case.*

While holding that the utmost good faith and impartiality must characterize the execution of a power of sale *in pais* under a trust-deed, on the facts of this case, the court refuses to set aside such a sale, without reference to complainant's delay in seeking to vacate it.

FROM the chancery court of Coahoma county.

HON. W. R. TRIGG, Chancellor.

On January 31, 1883, appellee, Mrs. Sharpe, then Ella M. Riddick, executed a trust-deed on her plantation, containing 672 acres of land, in Coahoma county, Miss., to one Sherwood, as trustee, to secure a debt to the American Mortgage Company, of Scotland, amounting to $2,000, payable December 1, 1887, with five interest coupon notes, payable, respectively, on December 1, 1883, and annually thereafter. The rate of interest was ten per cent. per annum, and the deed provided that if the coupon notes were not paid as they matured, they should bear interest thereafter at the rate of ten per cent. per annum. It also provided that if accruing taxes were not paid by the grantor, the beneficiary might declare the debt due, or might elect to pay the taxes and add the same to the secured debt. The trust-deed further provided that, should the grantor fail to pay the interest as it matured, or to comply with any of the conditions of the deed, the beneficiary, without notice to the said grantor, might elect to declare the whole indebtedness due, and proceed to have the property sold by the trustee under the power of sale therein contained. Default having been made, the property was sold under the trust-deed June 2, 1884, to appellee, G. W. Dunton, for $2,440, the amount then claimed to be due under the trust-deed, including interest and all charges. The sale was made in the name of Sherwood, the trustee. He, being a citizen of New York, was not personally present at

the sale, but was represented by D. A. Scott, who was requested to advertise and make the sale. Mr. Scott was also authorized to bid, for Dunton, at the sale, the sum named. The land was sold at auction, as required, and was bid off by Mr. Scott, in the name of Dunton. There is some uncertainty in the record as to whether the sale was actually cried off by Mr. Scott, or his brother-in-law, Mr. Yerger. A deed, in due form, was executed by Sherwood, the trustee, to Dunton, the purchaser. It recites a compliance with the requirements of the trust-deed, that default had been made, that the debt had been declared due, that notice of the sale was duly given and that the land was properly sold by the trustee. The trust-deed authorized the said Sherwood, or other person appointed to act for him as trustee, to advertise and sell, in case of default.

In March, 1884, prior to the sale under the trust-deed, the lands were sold for the non-payment of taxes, and were bought in by Dunton.

At the time of the trustee's sale, the grantor, through her agent or tenant, was in possession of the property. Subsequently, on January 2, 1886, Dunton sold and conveyed the land to appellee, J. H. Field, who resided in the state of Alabama, for the sum of $4,000, of which $500 was paid in cash, and the balance was secured to be paid in annual installments of $500 each, with interest at the rate of ten per cent. per annum from date. Dunton, it appears, after some litigation with Mrs. Sharpe, collected the rents for the years 1884 and 1885. At the time of his purchase, Field, without objection, took possession of the property, and has since held the same.

On December 13, 1889, appellee, a citizen of Memphis, Tenn., filed the bill in this case against the appellants, F. W. Dunton, J. H. Field, and Sherwood, the trustee, seeking to set aside the sale by said trustee, and to cancel the conveyance of Dunton to Field. The bill alleges that all the recitals in the deed executed by the trustee as to the exercise of the power of sale under the trust-deed are false; that the alleged

advertisement and sale were without the request of the mortgage company; that Sherwood, the trustee, did not make the sale, but that it was made through and by the direction of Dunton, who was the agent of the Corbin Banking Company, by whom the loan was negotiated for complainant; that the sale was managed and conducted throughout by D. A. Scott, the agent of Dunton, the purchaser; that Scott bid in the property for Dunton, and that it was sold for only one-fifth of its real value; that Field had full notice of the defects in the exercise of the power of sale. The bill further alleges that, while complainant executed her notes for the loan of $2,000, she actually received in cash only about $1,600. It also alleges that the pretended advertisement and sale were made immediately after a most disastrous overflow; that the entire Delta country, including the land of complainant, was submerged, causing the destruction of houses, fences and other improvements, and, particularly, that this was the case with complainant's land; that gloom and general demoralization followed, and that farming operations were practically suspended; that, owing to this, the lands were not cultivated during the year 1882, but that complainant leased the plantation for the years 1883, 1884, 1885, and would have been able to pay the debt, if an extension of time had been granted as requested. Complainant further alleges that she was very poor, and had a family of children dependent on her for support, and, therefore, was not able to contest the sale, which she alleged to be illegal, but that she gave notice to Dunton, and others in interest, that she would contest the sale as soon as she was able to do so; that she had spoken to a number of attorneys with reference to contesting the sale, but was unable to raise funds sufficient for this purpose.

The prayer of the bill is that complainant be allowed to redeem, and that the purchasers be treated as mortgagees in possession, the complainant offering to pay whatever is found due on the mortgage debt, as well as for any improvements made in good faith.

The answer of Dunton denies the material allegations of the bill as to the advertisement and sale; admits that Sherwood was not personally present, but avers that the sale was made by him under the trust-deed; avers that the property was duly advertised and sold, and that the trustee ratified the sale and executed a deed to the purchaser, who had conveyed the property to Field.   The answer further avers that before the sale Mrs. Sharpe made application to the mortgage company to have the sale postponed, and for an extension of time, which was refused; that she suffered the sale to proceed and yielded possession of the property, and is estopped by laches and by her conduct to complain of the sale.   Sherwood, the trustee, in his answer also denies the material allegations of the bill as above, and avers that the sale was duly advertised and made, and that he ratified the same and executed a deed to the purchaser.   He avers, also, that on default of the grantor the whole indebtedness was declared to be due, and that the mortgage company, through its agents and attorneys, directed the sale to be made.

The defendant, J. H. Field, in his answer also denies the material allegations of the bill as to the regularity of the advertisement and sale, and sets up that he purchased in good faith without notice of defects or irregularities, if any, and that no objection was made to his taking possession.

Testimony was taken at length.   Among other things, that of complainant tends to show that at the time of and immediately after the sale, she was in ignorance of any irregularity in respect to the same, except the failure of the trustee to be personally present, and this her attorney deemed insufficient to set aside the sale; that she then endeavored to repurchase by offering to pay the debt with interest, taxes and all charges, which was refused; that thereupon notice was given Mr. Scott, who was acting for Dunton, that she intended to contest the sale; that it was not until 1889 that she learned, through her attorney, of the alleged illegality growing out of the fact that Mr. Scott, while acting for the trustee, also represented the

purchaser at the sale; that shortly after the invalidity of the sale was discovered, and she had been advised of her rights, the bill was filed. The testimony also shows that only four or five persons were present at the sale, and that only the one bid was made.

The facts in regard to the appointment of the trustee are, that the mortgage company, on being informed of the default in payment of the interest, sent the notes and trust-deed from Edinburgh, Scotland, to the Corbin Banking Company, of New York, where the debt was payable, for foreclosure and collection in the usual course. The papers were, by the Corbin Banking Company, turned over to J. P. Dosh, the attorney of the mortgage company in New York, for collection. Dosh informed Sherwood, the trustee, who was an agent of the mortgage company, that the debt had been declared due, and requested him to sell as trustee. Sherwood instructed him to have some responsible person make the sale in his name, as it was impossible for him to be present. Dosh then forwarded the notes and trust-deed to D. A. Scott, at Friar's Point, Miss. Scott wrote, advising Dosh that he had posted notices of the sale, and stating that he thought it likely that the company would have to buy the lands in. Dunton informed Dosh that he would bid the $2,440 for the property, and, by his request, Dosh authorized Scott to make the bid. Sherwood, the trustee, being informed of the facts of the sale, executed the deed. He was connected with the Corbin Banking Company, and there was some testimony tending to show that, as agent of the mortgage company, he had authority to declare the debt due. There was no evidence introduced in regard to the posting of notices. The sale was made at the court-house door of the county, as required by the trust-deed. It was shown that the property had more than doubled in value between the time of sale and the hearing of the case.

There was no denial of the allegations of the bill as to the overflow, and as to complainant's financial condition, and her

efforts to have the sale postponed. Nor was the allegation that the complainant only received $1,600 at the time of the loan, denied.

A decree was entered in favor of complainant, from which the defendants appeal. The opinion contains such further statement of the case as, with the above, will indicate the points decided.

*Watson & Fitzhugh*, for appellants, Dunton and Sherwood.

1. The personal presence of the trustee at the sale was not necessary. *Johns* v. *Sergeant*, 45 Miss., 332; *Tyler* v. *Herring*, 67 Miss., 169. Irrespective of these authorities, the trust-deed in this case expressly authorized the trustee, or other person appointed to act for him, to make the sale.

In answer to the proposition that the trustee was not required by the mortgage company to sell, it is only necessary to call attention to these facts : (1) that default had occurred in payment of interest; (2) that the beneficiary had the right to declare the whole debt due; (3) that it had sent the note and trust-deed for collection; (4) that the attorney was requested to sell; (5) the trustee, who was also the agent of the mortgage company, had the right to declare the debt due, and he requested the sale made; (6) the trustee, who, as the agent of the mortgage company, had the right to declare the debt due, recites in his deed that this was done.

Where the mortgagee has the option to consider the entire debt matured on any default, it is not necessary that there shall be any formal expression for the purpose of declaring such option. Recital to this effect in a deed under a power of sale in the mortgage is sufficient. Generally, no notice of the intention to consider the whole debt due is necessary. Proceeding to enforce the mortgage sufficiently shows this. 2 Jones on Mort., § 1182; 8 Am. & Eng. Enc. L., 193, 194.

2. The contention that Scott was Dunton's attorney, and therefore not competent to conduct the sale, is based on mistake of fact. Scott was merely authorized to bid a certain

amount. He was not retained by Dunton for any legal serv-
ices. As the person authorized to conduct the sale for the
trustee, he received the bid, and the property was struck off
to Dunton. He had no authority to do any thing for Dun-
ton save make the one bid, for a fixed amount. He had no
interest in the purchase. The facts do not present the case
of the same party being the seller and buyer. Besides, the
absent trustee ratified the sale by executing a deed, and this
conveyed the title.

3. The bill was not filed until more than five years after
the sale. Meantime, Field had remained in undisturbed pos-
session, and the property had gradually increased in value.
On this point, see 90 Mo., 239; 91 U. S., 591; 143 *Ib.*, 553.

That complainant is not excused by her poverty, see 96 U.
S., 618; 12 Am. & Eng. Enc. L., 556.

*D. A. Scott*, for appellant, Field.

It was not necessary for Field to examine any further than
the deed from the trustee to Dunton. This showed the
proper execution of the trust-deed and the performance of
all the requirements therein contained. If there was any
secret fraud between the trustee and the beneficiary, it can-
not affect Field.

Appellee is estopped by acquiescence. 7 Smed. & M., 409;
55 Miss., 671; 66 *Ib.*, 61; 2 Lewin on Trusts, 873; 54 Am.
Dec., 33; 58 *Ib.*, 136; 65 *Ib.*, 691; 68 *Ib.*, 340; 2 Am. St.
R., 501; 8 *Ib.*, 661; 9 *Ib.*, 638.

*J. H. Wynn*, for appellee.

1. The following facts are charged in the bill and not de-
nied: (1) that complainant received only about $1,600 on
the loan, although it is claimed that $2,440 was due at the
time of the sale; (2) that the alleged sale was conducted by
Scott, who was the agent of Dunton, and that complainant
was ignorant of the relations between these parties until just
before filing the bill; (3) that the sale was made immediately

after a most disastrous overflow, when it was well known that the property would be sacrificed, and when it sold for only about one-fifth of its value; (4) that there were only four or five persons present at the sale, and only one bid was made; (5) that the complainant, being very poor, was then unable to contest the sale, but that she gave notice to Dunton, and every one else whom she thought proper, that she would contest it. These allegations, not being denied, must be taken as true, and testimony in opposition to them cannot be considered.

2. The trust-deed does not confer authority on the trustee to appoint another person to make the sale. It provides for the appointment of another trustee in certain contingencies, but manifestly it was contemplated that this appointment should be by the *beneficiary*, and not by Sherwood. 56 Miss., 126.

The mere ministerial act of posting notices and making the sale may be done by the agent selected by the trustee, as settled in *Johns* v. *Sergeant*, 45 Miss., 332, and *Tyler* v. *Herring*, 67 *Ib.*, 169. But if, in performing these ministerial acts, an exercise of discretion is called for, the trustee must be present to exercise it. Under the circumstances of this case, it was the clear duty of the trustee to adjourn the sale to prevent a sacrifice, yet he was not present to exercise discretion as to this. See 2 Perry on Trusts, § 602*u*; 26 Am. Dec., 536.

This case is clearly distinguishable from *Johns* v. *Sergeant* and *Tyler* v. *Herring.* Here the trustee committed the entire management of the trust to Dosh, who turned it over to Scott. This was a breach of confidence on the part of the trustee. It was for him to judge as to the time and manner of the sale. A trustee must act impartially, and with the utmost good faith.

It is no answer to say that Sherwood ratified the act of Scott. It is not shown that Sherwood knew Scott was the attorney of Dunton, or that Dunton had obtained a tax-title,

or any thing as to the circumstances of the sale. There can be no ratification without knowledge.

3. It being shown that the trustee was not present at the sale, and did not know that the recitals in his deed were true, it devolved upon defendants to show that the land had been properly advertised and the sale regularly conducted, as was held in *Tyler* v. *Herring*. It being shown that the trustee had no personal knowledge as to these things, the *prima facie* effect of the deed as to this is overcome. Here there is no evidence as to advertising the sale.

4. It was a condition precedent that the beneficiary should request the trustee to sell. 58 Miss., 130. The evidence fails to show that this was done. The trustee was not requested by the mortgage company to sell, and he could not request himself. He turned the entire matter over to the attorney, who had no authority to have the sale made. The notes were merely sent to New York for collection because they were payable there.

5. There was but a very small sum due when the sale was made, and there is no sufficient proof that the other indebtedness had been declared due by the beneficiary. The power to declare the debt due certainly could not be delegated. 56 Miss., 126. The defense attempted to be made, that the notes were declared to be due and a request made for the sale, is unfounded.

6. The sale was managed and conducted by Scott, who was the agent of the purchaser. A trustee cannot buy at his own sale, either for himself or another. Perry on Trusts, § 602; Lewin on Trusts, p. 486, § 83; 90 Am. Dec., 67. The opportunity for fraud is so great that the court will not stop to inquire whether there was actual fraud or not, but will set aside the sale without investigation where the duty of the trustee has been violated as to this.

7. The bill charges that Dunton was instrumental in bringing about the sale. The land was worth five times the amount for which it was sold. The loan had been made through

Sherwood, as agent of complainant. He had purchased at a tax-sale, and he was a member of the Corbin Banking Company, and Scott was his attorney. Every person connected with this sale was an agent or attorney of Dunton. The land was sold immediately after a disastrous overflow, when it was known that an attempt to realize any thing like the value of the property by a sale would be farcical. The costs and charges were piled up so that the amount, which originally was $1,600, had become $2,440. Sales under a power of this kind are harsh modes of foreclosing, and they are scrutinized with the greatest care, and will not be sustained unless conducted with fairness, regularity and scrupulous integrity. 2 Perry on Trusts, § 602*x*; 62 Miss., 668.

Dunton could not be a *bona fide* purchaser. He was bound to see that every thing necessary to the execution of the power had been done. 2 Perry on Trusts, 602*g*; 85 Am. Dec., 564; 99 *Ib.*, 562.

8. There was no such laches as will bar complainant. She gave notice that the sale would be contested, and as soon as the facts were ascertained, and she was informed of her rights, the bill was filed. There can be no laches without knowledge of such facts as would put one on inquiry. 1 Perry on Trusts, § 230; 2 Pomeroy's Eq. Jur., §§ 917, 965.

Equity will not bar one on account of delay short of the statutory period, where no one is damaged by the delay. 1 Perry on Trusts, §§ 229, 230; 12 Am. & Eng. Enc. L., 572; 17 Am. & Eng. R. R. Cas., 207; 66 N. Y., 175; 54 Am. Dec., 132; 72 Mo., 503; 94 U. S., 506.

*Calhoon & Green*, on the same side,

Filed a lengthy brief discussing the evidence, and making substantially the following points:

1. The right to declare the debt due upon default in payment of interest was a *personal* privilege, which could be exercised only by the mortgage company. The evidence shows that this right was not exercised by it, and hence the trustee

had no power to sell. The affirmative act of the company in declaring the debt due was a condition precedent to the exercise of the power. Failure to do this was not a mere irregularity. *McGowan* v. *McGowan*, 48 Miss., 553.

2. The power conferred, being a personal privilege in the mortgage company, could not be assigned. *Clarke* v. *Wilson*, 53 Miss., 119; *Porter* v. *West*, 64 *Ib.*, 548; *Hartley* v. *O'Brien*, *ante*, 825.

3. If the authority to declare the debt due could be delegated, it could not be exercised by Sherwood, the trustee. He was the agent of both parties, and was required to act for the protection of both. 128 Ill., 129.

4. Where there is failure to comply substantially with the power of sale, no title passes. 52 Miss., 368; 60 *Ib.*, 21; 61 *Ib.*, 397; *Tyler* v. *Herring*, 67 *Ib.*, 169; *Hartley* v. *O'Brien*, *supra*.

5. As to mere ministerial acts, such as posting notices, the personal attendance of the trustee was not necessary. Here the power of selecting the *time* of the sale was a matter of discretion for the trustee himself to exercise. Having delegated this, there was such a variation from the terms of the deed as renders the execution of the power void. Under the circumstances, it was a harsh remedy to have sacrificed the property at the sale. The trustee should not have abandoned the execution of his trust in favor of the creditor.

7. The sale was void, because Scott, the attorney for the creditor, was also the attorney for the trustee in making the sale. 38 Miss., 546; *Byrd* v. *Clarke*, 52 *Ib.*, 623.

8. Dunton cannot claim to be *bona fide* purchaser, and is not shown to be one. A purchaser at a trustee's sale is charged with notice of all the facts attending the sale. Even if there were mere irregularities and not a defect of power, this would be true as to Dunton. This also disposes of his claim of laches on the part of Mrs. Sharpe; and, besides, Dunton does not set up the defense of a *bona fide* purchaser. It is clear from the record that the $2,440 was bid by Scott

for the company, the conveyance being taken in the name of Dunton.

Where one purchases under a void exercise of a power, though the deed recites that the necessary conditions precedent have been complied with, the purchaser acquires no title, and cannot defeat the true owner through the lapse of time. *Bonner* v. *Lessley*, 61 Miss., 392.

It does not appear that Dunton paid any part of the bid, and it is plain, from all the evidence, that he was a mere figure-head, the sale being made to the mortgage company.

9. Immediately after the sale, and in ignorance of any irregularity, except the failure of the trustee to be present, complainant endeavored to repurchase, and offered to pay all charges. This was refused, whereupon notice was given Scott, who represented the company, that she intended to contest the sale. It was not until 1889 that she discovered the other facts affecting the validity of the sale. Soon after this the bill was filed. She is not estopped.

Argued orally by *J. H. Watson*, for appellant, and *M. Green*, for appellees.

CAMPBELL, C. J., delivered the opinion of the court.

The failure of the creditor to formally declare the whole debt due did not render its action, dealing with the notes and security according to its custom in such cases, nugatory, and that was quite sufficient. It spoke louder than words, and fully authorized its representatives in America to proceed with the collection of the debt in accordance with the deed of trust.

The personal attendance of the trustee at the sale was not necessary. It was allowable for him to act through others in advertising and auctioning the land. All that was necessary, was to comply with the deed of trust, and, if this was done with the sanction and approval of the trustee, it was as if done by him in person.

The fact that Mr. Scott, who represented the trustee in advertising and selling, was empowered to bid a sum named for Mr. Dunton, did not incapacitate him to make the sale. This was no disadvantage to the grantor in the deed of trust, but the contrary, for, but for this, it appears that the land would have been sold for far less than it brought.

There is nothing to show that Dunton was instrumental in procuring the sale, or that he had any connection with it, except to buy the land at a fixed price he was willing to pay. The land was bid off for him at the sale for taxes, on the first Monday of March, three months after default in payment of the interest, due December 1, 1883. Why he thus purchased is left to conjecture. It seems probable that it was assumed that, as default had been made, the land would be sold for the debt, and, in anticipation of becoming its purchaser at a sale under the deed of trust, it was purchased at the sale for taxes; but, whatever the explanation, there is in this circumstance no ground for condemnation of Dunton's purchase at the sale in June.

It appears that the sale was made just after a disastrous overflow, with all the disadvantageous incidents of such a condition, and that the grantor asked for delay; but her default as to taxes and interest occurred before the overflow, and there is no ground for the belief that she would have averted the sale if the overflow had not occurred. It rather seems probable that she would not, as she failed, during the fall and winter preceding, to provide for the payment of taxes and interest then due or maturing.

There is nothing to suggest that the sale was not advertised as required. The complaint of the bill is, not that the time and place of sale were not duly advertised, by required notices properly posted, but that it was not done by the proper person. There is no allegation that the required notices were not given, and that was not a matter of dispute in the court below. If it had been, the conclusion is fully warranted that the complainant has no ground for complaint on that score.

Contemporaneously with the sale, she did not make any such complaint, and cannot successfully make it now. She knew of the sale; sought to have it postponed; after it was made, endeavored to purchase the land, and, failing, threatened to contest the sale as invalid, on specific grounds other than a failure to give the prescribed notice. There was never a hint as to that. Therefore, upon the facts, independently of any presumption from the recitals of the deed made to Dunton, it may be assumed that there was due notice of the sale, as required by the deed of trust.

The utmost good faith, fairness and impartiality must characterize the execution of a power of sale in a deed of trust, or else the grantor may, by timely complaint, have it set aside. Tried by the highest standard, we have failed to discover in the facts of this case any ground for criticism of the sale or the action of any participant in it. We see in it nothing but the common occurrence of an unfortunate and helpless debtor, bound by a deed of trust duly executed, making impotent efforts to satisfy the creditor or obtain delay, and a creditor deaf to all appeals, and intent on dealing with the security given by the debtor according to its terms. Of this the debtor has no legal cause of complaint. To this end the deed of trust was made. Her misfortune in suffering the sacrifice of valuable property (pitiable as it may be, and exciting our sympathy), is but the experience of multitudes, and furnishes another instance of the truth of the saying of the wise man thousands of years ago, and as true now as then : " The borrower is servant to the lender." While sympathy may be indulged for debtors, the just rights of creditors must be upheld, and purchasers of property sold under deeds of trust must be protected in their legal rights. This is for the interest of debtors and all others.

The result would have been the same if the bill had been promptly filed, instead of more than five years after the sale. The delay is suggestive, but we decide the case without re gard to that, although it is a circumstance often of great

weight in cases like this, and might be decisive in some cases on the question of acquiescence. The notice of purpose to contest the sale, given by the appellee soon after it was made, was on a specific ground, the only one then known to her or her solicitor, and did not relate to any other. The fact that Scott managed the sale, and bought for Dunton, and that the land was purchased by Dunton at the sale for taxes and that under the trust-deed, and that conveyances were made to him, were known, or might have been, contemporaneously. These matters were not concealed, but occurred openly. Nothing else is known now. The charge that Dunton procured the sale, or had any connection with it, except as buyer, is denied, and not sustained.

As we uphold the sale made to Dunton, it is not necessary to consider separately the attitude of Field, who purchased from him, and whose rights are protected in upholding the sale to his vendor.

*Decree reversed, and bill dismissed at the cost of the appellee in both courts.*