E. B. K. TAYLOR ET AL. *v.* ALLIANCE TRUST CO.

1. CORPORATIONS.   *Foreign.   Holding land.   Public policy.   Comity.*

Under ch. 38, code 1880, and the act of 1882 (Laws, p. 50), there is no public policy making a distinction between the rights of foreign and domestic corporations as to ownership of lands in this state.   Nor does comity authorize such a distinction.

2. TRUST-DEED.   *Installments.   Default.   Foreclosure.*

Where notes due at different dates are secured by trust-deed which authorizes foreclosure for the whole indebtedness on non-payment of either of the notes, foreclosure may be had when there is default as to one of the notes, although there is no stipulation in the notes that all shall become due in such event.   *Dunton* v. *Sharpe,* 70 Miss., 850.

3. SURETY.   *Satisfaction of judgment.   Bona fide purchaser.*

While under § 998, code 1880, mere payment of a judgment by a surety does not release the principal or co-sureties, and execution may issue against them, yet, where such a payment is made, and the paying surety procures the plaintiff to indorse upon the record of the judgment a receipt for the money, reciting that it is "in full payment of this judgment, and the same is fully satisfied, and she is authorized to do therewith as she sees proper," the judgment cannot afterwards be asserted as against a subsequent *bona fide* purchaser of lands from the principal debtor.   *Yates* v. *Mead,* 68 Miss., 787, distinguished.

FROM the chancery court of Lee county.

HON. BAXTER MCFARLAND, Chancellor, being disqualified by reason of relationship to parties in interest, did not preside in this cause. By agreement, E. H. BRISTOW, ESQ., a member of the bar, presided as special chancellor.

Bill by appellee to cancel as a cloud upon its title to certain land in Lee county, a deed made by the sheriff of said county under an execution at which the appellant, E. B. K. Taylor, purchased, and also a deed made by her for a part of the land to appellants, Clarke & Clarke. The appellee is a corporation created by the laws of Missouri, and domiciled at Kansas City, in said state. A copy of its charter was filed with the amended bill, showing that the purposes for which it was incorporated were "to buy, sell, exchange and rent real estate, also to loan and borrow money on real estate securities, and to transact any and all business in relation to buying, selling, exchanging, renting and mortgaging the same."

It was urged by defendants in their demurrer and in their answer, as an objection to granting any relief, that complainant had no power to sue in any of the courts of this state; that the bill does not show that it had complied with the law and policy of this state by recording its charter in the office of the chancery clerk; that it was a mere volunteer, and neither privileged nor required to pay to the Lombard Investment Company the $2,700 alleged to have been paid by it in consideration of the purchase of the land at the trustee's sale mentioned in the opinion. It was also urged as an objection to complainant's right to relief, that all the notes executed by S. H. Taylor, and secured by one of the trust-deeds in favor of the Lombard Investment Company, were not due at the time of the sale of the land thereunder, and that the authority conferred by the trust-deed to declare all the notes due, in case of failure to pay any one or more of them, did not authorize a foreclosure of the trust-deed in advance of the maturity of all the notes, there being

nothing in the notes providing for thus declaring the entire debt due in advance of the maturity of all the notes.

After demurrer sustained to the original bill, an amended bill was filed, and a demurrer thereto was overruled. Defendants answered, denying the principal allegations upon which relief was sought. They also filed a cross-bill, in which they asked that, if for any reason the execution sale under which they claimed should be held invalid, they might be decreed to have the equitable title to the judgment, and that it be enforced against the lands in controversy. A demurrer to the cross-bill was sustained. The cause was then heard on amended bill, exhibits, answers and proof. A decree was rendered for complainant, establishing its title under the trustee's sale, and canceling the deed to defendant, E. B. K. Taylor, and her deed to Clarke & Clarke. The opinion contains such further statement of the case as is necessary to an understanding of the questions decided.

*Clarke & Clarke,* for appellant.

1. Section 1032, code 1880, provides that domestic corporations not specially provided for by act of the legislature may hold property necessary for its purposes, in value not exceeding $50,000, and that any such corporation offending against the section shall forfeit its charter and property. From this, it is manifest that the legislature intended to prohibit such bodies from acquiring property, except so much as may be necessary for transacting their business. In Illinois, under a similar statute, it was held that a corporation could not hold property beyond that which was necessary for its business or the collection of its debts, giving as the reason that it was contrary to the policy of the state and tended to create perpetuities. *Trust Co.* v. *Lee,* 73 Ill., 142. See also *Hough* v. *Land Co., Ib.,* 23; 67 *Ib.,* 568.

The property purchased here—a plantation—was not necessary or proper for the business of appellee, and it was not taken in payment of debt. Buying this land did not come

within the power conferred by the charter. Comity does not authorize a corporation to do an act in conflict with the laws or policy of the state. 13 Peters, 589; 8 Wall., 168.

It is true that, as a general rule, objections like this can only be raised by the state, but this is not the case where the contest arises between the corporation and a stranger to the contract. But, if it was the rule, it was changed by § 1042, code 1880, which provides that foreign corporations shall not do any act in this state contrary to the laws or policy thereof, and shall not be allowed to recover on any contract made in violation of the laws or policy of the state.

The analogy between this statute and § 589, code 1880, as to privilege taxes is apparent. In the last-mentioned section, the question of the default in payment of the privilege tax is a matter between the state and the defaulter, but the section provides that the contracts of such persons shall be null and void, and no suit shall be maintainable thereon.

2. On payment of the money by Mrs. L. T. Freeman, who was surety, a receipt in full for the judgment was given her, specifying that "she is authorized to do therewith as she sees proper." By this, we contend that she became subrogated to all the rights of the judgment creditor. Code 1880, § 998; *Partee* v. *Mathews*, 53 Miss., 140; 1 John. (N. Y.), 409; 10 *Ib.*, 524; 14 Varb. (N. Y.), 481; 20 N. Y., 98.

3. Appellee is not a *bona fide* purchaser. It bought at a trustee's sale long subsequent to the rendition of the judgment, with full notice, actual and constructive, of the rights of the parties in the premises, and as a mere volunteer.

4. It is true that § 998, code 1880, provides for the affidavit to be made by the surety. But this was not intended to limit the rights given the surety. One of these was the right to assign or transfer the judgment, and we submit that the assignee of a judgment creditor could exercise this right, and the surety, on paying, became, in effect, a judgment creditor. *Partee* v. *Mathews, supra;* Freeman on Judgments, §§ 421, 431.

The right to make the affidavit and have the execution issued was one of the rights which the owner of the judgment had, and which he could assign with the judgment. The assignee was as much entitled to make the affidavit as the assignor.   22 Am. St. R., 570.

At most, the objection as to this is based upon a mere irregularity, which would not render the sale under the execution void.   52 Mo., 43; 5 Lawson's Rights & Rem. & Prac., 4330; Freeman on Judgments, § 43; 1 Am. & Eng. Enc. L., 125, notes; 2 Am. St. R., 174; *Ib.*, 207; 9 Smed. & M., 216; 25 Miss., 156; 31 *Ib.*, 440.

5. The defect in reference to the ownership of the land in controversy by complainant, a foreign corporation, was not cured by the act of 1882 (Laws, p. 50).   Section 1027, code 1880, provides for corporations to be created thereunder, and § 1032 provides that every corporation not otherwise provided for by act of the legislature, may hold real and personal property necessary for its purposes, in value not to exceed $50,000.   The act of 1882 was intended only to enlarge the number and character of corporations to be created under the code chapter.   Section 1032 of the code embraces all corporations in reference to the amount of property they may hold.   It is a general law relating to corporations.   The act of 1882 left this law intact, and the appellee, not belonging to the class mentioned in the statute, is unaffected by it, and must stand or fall by the general law.

6. A negotiable promissory note, due and payable in the future, cannot be brought to immediate maturity through a clause in the mortgage given to secure it, authorizing the mortgagee to declare the debt due.   *White* v. *Miller* (Minn.), 54 N. W. Rep., 736.   See also *Railway Co.* v. *Sprague*, 103 U. S., 756.

*Clayton & Anderson*, on the same side.

1. Under the laws and policy of this state, the appellee, a foreign corporation, could not acquire or hold the land in

controversy. The policy of the state, as shown by the general course of legislation on the subject of ownership by domestic corporations, will be applied to foreign corporations. By the law of comity, foreign corporations will be allowed the same privileges as are granted to domestic corporations, but no greater. By § 1032, code 1880, corporations generally were authorized to hold real estate necessary for their purposes, in value not to exceed $50,000. Under this section and under the amendatory act of 1882, the only property allowed to be held by corporations was for the purpose of providing a means for their doing business. The only change made by the act of 1882 was that the power was extended to hold and own property, to an unlimited amount, necessary and proper to carry into execution the purposes of the corporation.

According to the construction of the court below, the appellee could buy, and hold in perpetuity, all the property in the state, and this in the face of our stringent laws against individuals having such a right. As a case directly in point on this subject, and under a statute very similar to ours, we refer to *Carroll* v. *East St. Louis*, 67 Ill., 568, s.c. 16 Am. R., 632.

Appellee did not acquire this land as the result of loaning money in this state, or as the result of doing any business, but solely for the purpose of speculation. On this point, we refer to the language of the court in *Williams* v. *Creswell*, 51 Miss., 817. Further, as to the present policy of our state on this subject, we refer to code 1892, § 838.

3. While the general rule, in the absence of a statute, is that the state only can raise the objection that a corporation is holding land contrary to the laws or policy of the state, we have a different rule on the subject. Code 1880, § 1042, which is the same as code 1892, § 849. This provides that foreign corporations shall not do any act contrary to the laws or policy of this state, and shall not be allowed to recover on any contract made in violation of the same.

4. The entry made by plaintiff's attorney in the margin of the minute-book, at the time the judgment was assigned, does not estop defendants from setting up title under the execution. While this entry recites that the money was received in settlement of the judgment, yet it expressly states that Mrs. Freeman was " to do as she pleases with it." There is nothing in this to operate as an estoppel. It is not misleading, and shows very plainly that the judgment was paid by the surety, and that it belonged to her, and that she could proceed thereunder to protect her rights. As decisive of this point, we cite *Yates* v. *Mead*, 68 Miss., 787.

*Gilleylen & Leftwich*, for appellee.

1. On the point as to the power of a foreign corporation to hold land, and that objection as to this can only be made by the state, see 4 Am. & Eng. Enc. L., 232 *et seq.*; 2 Kent's Com., 282; 100 U. S., 55; 101 *Ib.*, 352; 107 *Ib.*, 174; 110 Ill., 65; 5 S. W. Rep., 686; 35 N. W. Rep., 260; 94 N. C., 374.

Comity authorizes a foreign corporation to hold land here. *Williams* v. *Creswell*, 51 Miss., 817.

Under §§ 1032, 1042, code 1880, all corporations may hold land necessary for their purposes. The law as to this was not changed by the act of 1882. (Laws, p. 50.) The repeal of the laws of comity is not to be implied. 2 Morawetz on Cor., 966.

Each state extends to all corporations a right to carry on business within its jurisdiction. 2 Morawetz on Cor., §§ 958, 961, 977; 51 Miss., 817; *Thompson* v. *Natchez Water Co.*, 68 Miss., 423.

2. Sections 998, 1140, 1749, code 1880, are in derogation of the common law, and must be strictly construed. Under the common law, when a judgment is once satisfied no power can revive it. Black on Judgments, §§ 991, 996, 999; *Staples* v. *Fox*, 45 Miss., 667. The judgment under which appellants claim was marked satisfied on the record, and execution thereafter issued was void.

Section 1749, code 1880, applies only in cases of assigned judgments. Mrs. Taylor was in no sense an assignee. After the payment of the money, the judgment was a dead letter, and there was no longer a lien upon the property of the defendant.

Complainant's title was fully made out, and it was entitled to the decree rendered.

Argued orally by *W. F. Clarke*, for appellants.

COOPER, J., delivered the opinion of the court.

It is not suggested by the evidence in the record, nor in argument of counsel, that the appellee has at any time acquired or owned lands in this state in excess of the quantity which it might have owned had it been a corporation organized under the laws of this state. But if that fact appeared, it would confer no right upon appellant to make the objection. The state alone can apply the corrective. *Quitman County* v. *Stritze*, 70 Miss., 320.

Nor is it true that there existed any public policy of the state evidenced by legislation, by reason of which the appellee was precluded from acquiring real estate in this state. Chapter 38 of the code of 1880 contained general provisions for the organization of incorporations for certain purposes. By the act of March 7, 1882 (Laws, p. 50), it was provided that "all corporations, except cities and towns, and express, telegraph and railroad companies may be created in the mode and manner, and with all the rights, honors and privileges and immunities, as provided in chapter 38 of the code of 1880." By the same act the right was conferred upon any company so organized to "hold and own real and personal property to any amount, and to sell, exchange and incumber the same." It is idle to talk of the existence of a public policy against ownership of lands by corporations in the light of this legislation, by which such ownership was permitted to an unlimited extent, and was, in fact, invited and encouraged

by the simplicity of the statutes under which corporations might be formed. We fail to appreciate the distinction sought to be drawn by counsel between domestic corporations and those created by other states. It cannot be said that it is against the policy of this state to permit corporations of other states to do business here, especially where the business they are organized to do is directly encouraged to be done by domestic corporations. On the contrary, the rule of comity may be said to be almost universal that corporations created by one state may transact its business in any other state in which, if the corporation was a domestic one, the business might there be lawfully conducted.

We have not found the authority relied on by counsel— *White* v. *Miller* (Minn.), 54 N. W. Rep., 736—in which it is said to have been decided that "a negotiable promissory note, due and payable in the future according to its terms, cannot be brought to immediate maturity through a clause in a mortgage, given to secure it, authorizing the mortgagee to declare the debt due on default in any of the provisions of the mortgage." If the suit in that case was upon the note, it may be that the decision was correct; but, if the decision was that the mortgagee could not, though authorized so to do by the terms of the deed, proceed to subject the security to the satisfaction of the debt, we should not follow it, for a contrary practice has always prevailed in this state, and such provisions have been approved. *Dunton* v. *Sharpe*, 70 Miss., 850. We see nothing unlawful in such stipulations, and, so long as parties and not the courts are to make contracts, we know no reason why contracts, when made, should not be enforced according to their terms.

We find nothing to invalidate the title of complainant to the lands in controversy, unless it be true that appellant, by her purchase at the execution sale against S. H. Taylor, acquired title to the land superior to that of complainant. To that inquiry we now proceed. The facts upon which the controversy in this particular rests are these: Prior

to the year 1888, one R. D. Freeman, as guardian of Dozier Taylor, loaned to the firm of Freeman Bros. a sum of money, and received therefor the note of said firm, upon which L. T. Freeman, Jane K. Freeman, C. W. Taylor and S. H. Taylor were sureties. Whether the note showed upon its face that the other makers were sureties for Freeman Bros. does not appear; we assume that it does not, but was in the usual form, and that all the subscribers thereto appear as co-makers. In the year 1888, R. D. Freeman, for the use of C. W. Troy, brought suit on this note against L. T. Freeman, Jane K. Freeman, C. W. Taylor and S. H. Taylor, and recovered judgment against them for the sum of $2,308, which judgment was duly enrolled in Lee county. Afterwards Mrs. L. T. Freeman paid to the plaintiff in the judgment the sum of $1,500 in full satisfaction thereof, and an entry thereof was made on the judgment-roll in these words :

" Received of Mrs. L. T. Freeman fifteen hundred dollars ($1,500) in full payment of this judgment, and the same is fully satisfied, and she is authorized to do therewith as she sees proper.     J. Q. ROBINS, *Att'y for Plaintiff.*"

When this entry was made does not appear, but some time afterwards S. H. Taylor, who owned the lands in controversy, executed two certain deeds of trust upon the same to John. I. Dunn, trustee for the Lombard Investment Company, to secure the payment of about the sum of $3,000, which he then borrowed from said company. These incumbrances were duly recorded, and, upon breach of condition, a sale thereunder was made by a substituted trustee, at which the complainant became the purchaser.

After the execution and recording of these deeds of trust, but before the sale thereunder, Mrs. L. T. Freeman, who had paid off the judgment at law as above stated, assigned the same to the appellant, E. B. K. Taylor, who, on the fourteenth day of July, 1891, made and filed with the clerk of the court in which the judgment had been rendered, an affi-

davit, setting forth the fact that said judgment had been rendered; that the defendants were jointly and severally liable thereon, and that it had been paid by the defendant, L. T. Freeman, who afterwards assigned the same to affiant, and prayed the issuance of an execution thereunder for her use and benefit. Upon the filing of this affidavit, an execution was issued as prayed, which was levied upon the lands in controversy as the property of S. H. Taylor, and a sale thereof was made, and at the sale the appellant, E. B. K. Taylor, became the purchaser thereof at the price of $210. E. B. K. Taylor conveyed a part of the land so bought to appellants, Clarke & Clarke. The execution sale was made in the year 1891, and its effect is determinable by the provision of the code of 1880, in which no express provision is made for the protection of the rights of *bona fide* purchasers, as is done by the code of 1892, § 3280.

By the code of 1880, § 998, it was provided as follows: " When any judgment shall be rendered, or shall have been rendered, against a principal debtor and his sureties, or against the sureties only, and any one or more of such sureties shall pay and satisfy the same, such judgment shall, by operation of this act, be transferred and assigned to the surety or sureties so paying off and satisfying the same, who shall have all the liens and equities which the judgment creditor may have had by virtue of such judgment, or of the debt or claim on which it is founded; and such surety, on making affidavit of his suretyship and of the payment of such judgment, and filing the same, together with the evidence of such payment, with the clerk of the circuit court in which the judgment was rendered, shall be entitled to have execution issued on such judgment, in the name of the plaintiff against the defendants on the record, in the same manner as if the judgment had not been satisfied; and the clerk shall indorse thereon that the same is issued for the use of the surety so having paid such judgment; and the sheriff shall proceed to collect the same from the principal

debtor therein, for the use of such surety, if the principal debtor be a party to such judgment; and if the principal debtor be not a party to such judgment, or if, being a party, no property can be found to satisfy the execution, then he shall collect a ratable proportion of the money from each of the co-sureties, for the use aforesaid." By § 1140 the benefits of this section were extended to other joint execution debtors.

The chancellor held that this statute, being in derogation of the common law, was to be strictly construed, and, since the affidavit for the execution was not made by the surety by whom the judgment was paid, but by her assignee, the execution was not authorized by the statute, and the sale thereunder was void. The view we take of the rights of the parties makes it unnecessary for us to explore the perplexing field of inquiry in reference to the distinction between void and voidable proceedings. We are of opinion that no sale of the land could have been made under the execution, if it had been issued in strict conformity to the statute, which would have affected the right of the Lombard Investment Company under the deed of trust it secured from S. H. Taylor, and that the complainant, who purchased at a sale under such deed, is equally protected.

The purpose and effect of the statute was to preserve to the surety the right to secure at law, and by the execution of the judgment, the same relief which, in the absence of the statute, he might have had by resort to a court of equity. The mere payment of the judgment by the surety would not, under the statute, operate to discharge the lien of the judgment, either upon the property of the principal or of the co-sureties, parties thereto; and if nothing but payment had occurred, the judgment itself, together with the right to execution thereof, would have been preserved. But more than this was done, for there was a formal and express notation made upon the record of the judgment that it had been paid and discharged. This entry, the answer of the defendant admits, was procured to be made by Mrs. Freeman, the party

Syllabus.

by whom the payment was made. In *Yates* v. *Mead*, 68 Miss., 787, an entry was made upon the judgment-roll that the same had been "settled," but, since it did not appear that this had been done by the indorser paying the judgment, it was held that he was not affected thereby. But in the present case the party paying the judgment caused satisfaction thereof to be certified, and neither she nor those claiming under her can assert, as against a *bona fide* purchaser, that the judgment lien on the lands bound by it was not discharged.

*The decree is affirmed.*