FITTS *v.* TERMINAL WAREHOUSE CORPORATION *et al.*

(*Nashville,* December Term, 1935.)

Opinion filed May 2, 1936.

199

SEAY, STOCKELL & EDWARDS and JOHN M. BARKSDALE, all of Nashville, for appellant.

J. G. LACKEY and JOHN H. LECHLEITER, both of Nashville, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

In July, 1928, Elizabeth Mayo *et al.* deeded to "J. O. Swingley, trustee," certain lands, liens being retained to secure payment of deferred purchase-money notes; and in September following Swingley, as trustee and

individually, joined by E. T. Noel and wife and W. J. Fitts and wife, conveyed these lands to the Terminal Warehousing Corporation, this grantee expressly assuming payment of the purchase notes given by Swingley, and the deed contained this recital:

"The tracts of land hereinafter described were conveyed to J. O. Swingley, Trustee, who was acting for and on behalf of the undersigned, E. T. Noel and W. J. Fitts, they being the sole and only beneficiaries."

The corporation defaulted in payment of the assumed notes, which had been executed by Swingley, as trustee, for and on behalf of Noel and Fitts. Mayo brought suit and obtained decrees of foreclosure and personal judgments both against Noel and Fitts, as the real obligors on the vendor lien notes, and the corporation as the assuming subsequent purchaser. This decree was entered December 12, 1930. In June, 1931, executions issued and were returned on the 18th of July indorsed, "executed by collecting the within judgment, together with interest and costs, in full, from defendant W. J. Fitts." This return was not copied on the execution docket, the entries thereon, dated July 21, 1931, showing simply that the executions had been returned executed in full by the sheriff. This was followed by notations as follows: "The opposite judgments satisfied in full, this July 25, 1931, Alfred T. Adams, Solicitor."

Some five months thereafter, on December 15, 1931, Fitts filed suit against the Terminal Warehousing Corporation, asserting his secondary liability only on the original purchase obligations, in view of the assumption of the indebtedness by the corporation, and praying to be subrogated to the rights of the complainants in the foreclosure suits wherein the judgments had been ob-

tained which he had paid off. Following a *pro confesso,* he was granted decrees accordingly on the 25th of November, 1932, and the property was sold thereunder to satisfy these decrees, and bid off by him. However, he did not comply with the terms of sale and no further steps were taken in said causes.

On the 20th of May, 1933, the instant suit, a general creditor's proceeding, was brought by W. J. Fitts, as a creditor and stockholder of the defendant Terminal Corporation. As an incident of this proceeding, the sole controversy presented for determination by this appeal arose, the issue in question having been determined by the chancellor on a stipulation of fact adversely to complainant Fitts, who appeals.

From the record thus made up it appears, in addition to facts hereinbefore stated, that on or about August 1, 1931, subsequent to the payment by Fitts of the judgments which had been entered jointly against the corporation, Noel, and himself, the corporation borrowed the sum of $5,500 from the banking house of Thomas W. Wrenne & Co., securing the loan by the execution and registration of a mortgage or trust deed on the real estate which had been deeded by Swingley, Fitts, and Noel to the corporation, the vendor's lien encumbrances thereon in favor of Mayo *et al.,* being assumed by the corporation. A few days later Thomas W. Wrenne & Co. sold and transferred to Mrs. Rose O'Donnell this borrowed money obligation, a promissory negotiable note secured by mortgage as aforesaid. Neither Wrenne & Co. nor Mrs. O'Donnell had any actual notice of the fact that Fitts had paid off the judgments aforesaid, or that he claimed to have occupied the status of a surety, or secondary obligor, to the Terminal Corporation, or that

he made claim to the right of subrogation to liens or judgments decreed in said foreclosure cases in favor of Mayo *et al.* It will be observed that it was not until December 15, 1931, nearly five months after the making of said loan of $5,500 and payment of the money to said corporation, and registration of the securing trust deed, that Fitts first took any steps to assert said right of subrogation, or in any manner gave notice or indication of a purpose or intention to make such claim. In a comprehensive and forceful opinion the learned chancellor reviews the facts and the law applicable and denies to complainant this equitable relief.

■ The equitable principles involved in the application of the doctrine of subrogation, and our cases dealing therewith, are fully reviewed in a recent opinion by Mr. Justice McKinney in *Dixon* v. *Morgan,* 154 Tenn., 389, 285 S. W., 558, 561. As therein declared, this court is committed to the doctrine of subrogation, or equitable assignment, and is desirous to extend and broaden the rule, *"unless rights of third parties have intervened."*

■■ The quoted and italicized line is a clear reservation, or exception, in point here. It may be conceded in our consideration of the case before us that Fitts occupied a position which entitled him, as between himself and the parties to the foreclosure suits brought by the vendor's lienholders against the Terminal Corporation and himself, to invoke the right of subrogation, although his relation to the transaction and parties was somewhat involved, but his right to assert such a claim against an innocent third party is quite another matter. In 60 C. J., p. 767, in support of its text reading, "subrogation to, or enforcement of, the creditor's rights will be denied as against subsequent purchasers and encum-

brancers where there are circumstances which would render it inequitable," among the cases cited is *Taylor* v. *Alliance Trust Co.*, 71 Miss., 694, 15 So. 121, wherein the court held, much in point here, that if the surety himself enters a satisfaction and discharge of a recorded lien or security, he cannot thereafter assert the same, by way of subrogation, against one who *bona fide* purchases the property from the principal after entry of the satisfaction. When Fitts paid the judgments in the instant case, he discharged the liens thereof of record and opened the way for the rights of third parties purchasing or loaning money thereon to intervene.

██ The insistence made for Fitts is that the subsequent encumbrancer for a valuable cash consideration was chargeable with constructive notice of his rights. But this argument overlooks a fundamental principle that is determinative. This "notice" obtainable by a search of the record of the court foreclosure proceedings was at most only notice that Fitts had paid the judgment, and that he had been secondarily liable only for the vendor's lien notes on which the judgment rested. But this carried no notice that he, a stockholder and director of the company, intended to invoke the equitable doctrine of estoppel at some future day. And this is the crux of the issue. The doctrine of subrogation is not self-executing. In an early Pennsylvania case (*Rittenhouse* v. *Levering*, 6 Watts & S., 190) wherein it was held that one who had omitted to take some action at the proper time manifesting his intention to put himself in the place of the original creditor, cannot afterwards invoke subrogation, his remedy being for money paid, the court thus aptly phrases the principle determinative here:

"The error on this head arises from the assumption that *ipso facto* on payment of the money, the surety is subrogated to the rights of the creditor; whereas the remedy [of the surety] is not *prima facie* on the bond [the security held by the creditor], but for money paid; although *the surety may, if he chooses,* invoke the aid of the equitable principle of subrogation."

The words we italicize go to the root of the matter. Choice and the exercise of it is essential. The relief is elective, and until moved for is inchoate, dormant. In so far as the lien element goes, until proper steps are taken to impound or subject the security held by the creditor, there certainly exists no more than a right to establish a lien.

An illustrative analogy may be found in the case of a judgment creditor with a *nulla bona* return who may by bill subject the equity of the debtor in property encumbered by a deed of trust. The creditor has this right, is entitled to this remedy, but until he exercises it, a *bona fide* purchaser for value takes free from such right or claim. As has been shown, the case of Fitts rests on the theory of constructive notice. But mere constructive notice by a purchaser for value of the existence of a judgment creditor would not avail to defeat the rights of such a purchaser, acting in good faith.

While our cases have not dealt with the precise question involved, they are in principle in accord with the views here expressed. In *Maryland Casualty Co.* v. *McConnell,* 148 Tenn., 656, at page 661, 257 S. W.; 410, 412, GREEN, C. J., adopts from *Bittick* v. *Wilkins,* 7 Heisk. (54 Tenn.), 307, this definition of the rights of a surety: "A surety, by paying the debt of his principal, *becomes entitled to be substituted* to all the rights

of the creditor, and to have the benefit of all the securities which the creditor had for the payment of the debt," etc. We italicize the words *"becomes entitled to be substituted."* This is consistent with the holding in *Belcher* v. *Wickersham,* 9 Baxt. (68 Tenn.), 111, that the right is optional, to be waived, or enforced, as the paying·surety may elect. It is a remedy he is "entitled to" invoke or pursue. To "entitle to" is to give a right to; to qualify for; "to furnish with proper grounds for seeking or claiming." Websters New International.. When the surety pays, he acquires "grounds for seeking or claiming" substitution to the rights of the creditor whose debt he discharges. While it is not essential for the surety to show that he manifested at the time an intention to exercise this optional right to subrogation, he must proceed within a reasonable time thereafter, and before the rights of third parties intervene, particularly an innocent purchaser, or mortgage encumbrancer for cash loaned, such as the appellee here is shown to be. "Equity aids the vigilant, not those who sleep upon their rights."

Affirmed.